**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edvena Yoe, | No. CV-18-08112-PCT-SPL |
| Plaintiff, | **ORDER** |
| vs. | |
| United States of America, | |
| Defendant. | |

Before the Court is Defendant United States of America's (the "Defendant") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. 23) (the "Motion"). The Motion was fully briefed on March 1, 2019. (Docs. 28, 32) The Court's ruling is as follows.

**I. Background**

On March 2, 2016, Edvena Yoe brought her six-month-old son, C.B., to the triage area at Chinle Comprehensive Health Care Facility (the "Hospital"). (Doc. 17 at 7) Both Yoe and her son (together, the "Plaintiff") are enrolled members of Navajo Nation. (Doc. 17 at 2) C.B. was sent to the emergency room where James Murtagh, M.D. ("Murtagh") noted C.B. had no history of nausea and vomiting, despite C.B.'s history of nausea and vomiting. (Doc. 17 at 7) Later that day, C.B. was returned to the emergency room. (Doc. 17 at 8) Murtagh examined C.B. and diagnosed gastroenteritis for the second time, but stated that the child appeared well and hydrated. (Doc. 17 at 8) C.B. was then discharged.

(Doc. 17 at 8) On March 4, 2016, approximately 29 hours after C.B.'s second discharge, C.B. was brought back to the emergency room in cardiac arrest. (Doc. 17 at 8) At 8:33 a.m. on March 4, 2016, C.B. was pronounced dead. (Doc. 17 at 8) The cause of death was determined to be dehydration due to gastroenteritis. (Doc. 17 at 8)

The Hospital is operated by the Defendant through its agents and employees, the U.S. Department of Health & Human Services, the U.S. Public Health Services, and Indian Health Services ("IHS"). (Doc. 17 at 2) The Hospital contracted with Harris Medical Associates ("Harris"), a medical employment placement agency, to staff its medical facilities. (Doc. 17 at 5–6) A purchase order (the "Solicitation") for emergency medicine service physicians was created by the Hospital and issued to Harris for the purpose of staffing the Hospital. (Doc. 23-1 at 2–9) The Solicitation was "a Nonpersonal Service purchase order" and stated that "[Harris] shall provide Emergency Medicine Physician Services in the delivery of patient care to the [the Hospital] . . . in accordance with the Performance Work Statement . . . ." (Doc. 23-1 at 2) Under this agreement, Harris placed Murtagh at the Hospital to work as an emergency medicine physician. (Doc. 17 at 5–6)

The Performance Work Statement for Nonpersonal Services ("PWS") describes the requirements and duties of a physician working under a non-personal services contract at the Hospital. (Doc. 17-1 at 2) It defines a "non-personal services contract" as a contract under which "the personnel rendering the services are not subject . . . to the supervision and control usually prevailing in relationships between the Government and its employees . . . ." (Doc. 17-1 at 5) The PWS mandates that Harris (through its contracted physicians) perform emergency medicine duties, manage patient needs (including diagnosing and treating patients), comply with documentation standards, and comply with other performance-related requirements. (Doc. 17-1 at 8–11) Under the PWS, the Hospital would have control over some things like the physicians' work schedules and management of patient information. (Doc. 17-1 at 10, 12) The PWS also contains a quality assurance clause which states that "all services rendered in this specialty in the delivery of patient care services shall be inspected, reviewed, and monitored by the [the Hospital's] Chief of the

Emergency Room or his designee." (Doc. 17-1 at 9)

The PWS also mandates that physicians meet work experience and licensing requirements. (Doc. 17-1 at 13) Murtagh, however, was not trained or board certified as an emergency medicine physician or family practice medicine prior to his placement at the Hospital. (Doc. 17 at 6) The PWS also addresses the Federal Tort Claims Act ("FTCA") and how the PWS relates to 25 U.S.C. § 1680c(e), a provision of the Indian Health Care Improvement Act ("IHCIA"). (Doc. 17-1 at 15) The PWS states:

"Previously, health care providers working at Indian Health Service or Tribal facilities under non-personal services contracts – such as locum tenens providers – were generally not covered under the [FTCA] and had to secure their own malpractice insurance. However, the recently passed 25 U.S.C. 1680c(e) may extend [FTCA] coverage to these "non-Service health care practitioners" who are given clinical privileges and who provide health care services to patients eligible for services from the Indian Health Service . . . ." (Doc. 17-1 at 15)

The Plaintiff initated this case on May 30, 2018 and filed a complaint alleging causes of action for medical negligence (Count I), wrongful death (Count II), negligent hiring and supervision (Count III), and vicarious liability (Count IV). (Doc. 1; Doc. 17 at 9–12) The Defendant filed the Motion seeking to dismiss Counts I, II, and IV for lack of subject-matter jurisdiction and Count III for failure to state a claim. (Doc. 23 at 6)

## II. Legal Standard

### A. FRCP 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) "allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction." *Kinlichee v. United States*, 929 F. Supp. 2d 951, 954 (D. Ariz. 2013) (citing *Tosco Corp. v. Comtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001)). Allegations raised under FRCP 12(b)(1) should be addressed before other reasons for dismissal because if the complaint is dismissed for lack of subject matter jurisdiction, other defenses raised become moot. *Kinlichee*, 929 F. Supp. 2d at 954. A motion to dismiss for lack of subject matter jurisdiction under FRCP 12(b)(1)

may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction or the existence of subject matter jurisdiction in fact. *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979)); *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Renteria*, 452 F. Supp. 2d at 919 (citing *Federation of African Amer. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996)). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. *Renteria*, 452 F. Supp. 2d at 919 (citing *Thornhill*, 594 F.2d at 733). A plaintiff has the burden of proving that jurisdiction does in fact exist. *Renteria*, 452 F. Supp. 2d at 919 (citing *Thornhill*, 594 F.2d at 733). Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Rosenbaum v. Syntex Corp.*, 95 F.3d 922, 926 (9th Cir. 1996).

**B. FRCP 12(b)(6)**

To survive a FRCP 12(b)(6) motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court may dismiss a complaint for failure to state a claim under FRCP 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacificia Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In deciding a motion to dismiss, the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving

party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In comparison, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not entitled to the assumption of truth, and "are insufficient to defeat a motion to dismiss for failure to state a claim." *Id.*; *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). A plaintiff need not prove the case on the pleadings to survive a motion to dismiss. *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012).

**III. Analysis**

The Defendant seeks dismissal of Counts 1, 2, and 4 under FRCP 12(b)(1) and dismissal of Count 3 under FRCP 12(b)(6). Each issue will be addressed in turn.

**A. <u>12(b)(1) Lack of Subject-Matter Jurisdiction</u>**

The Defendant argues that the FTCA, the terms of the PWS, and the terms of the Solicitation do not support federal subject-matter jurisdiction. By invoking material outside of the complaint to make that argument, the Motion is thus a factual Rule 12(b)(1) challenge.

1. <u>Federal Tort Claims Act</u>

In order to establish subject-matter jurisdiction against the Defendant, two things must exist: (1) a waiver of sovereign immunity and (2) statutory authority vesting a district court with subject-matter jurisdiction. *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007). The FTCA is a statute that vests federal courts with exclusive jurisdiction over suits arising from the negligence of government employees. *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir. 1992). The FTCA allows private parties to sue the United States for money damages for injuries caused by the negligent or wrongful acts or omissions of government employees while acting within the scope of their office or employment at agencies or entities that are performing government functions. 28 U.S.C. § 1346(b)(1); *Andrade ex rel. Goodman v. United States*, 2008 WL 4183011, at 4 (D. Ariz. Sept. 8, 2008); *Richards v. U.S.*, 369 U.S. 1, 6 (1962). In the FTCA, the Government waives its immunity for negligent acts or omissions of any of its employees acting within the scope of their office or employment and provides subject-matter jurisdiction to the federal courts in suits against such employees. 28 U.S.C. § 1346(b)(1). Federal courts have jurisdiction

over FTCA cases, but apply the law of the state where the act or omission occurred. *Richards*, 369 U.S. at 11.

The FTCA does not cover the acts of independent contractors; generally, the Government may not be held liable for employees of a party with whom it contracts for a specified performance. *Logue v. United States*, 412 U.S. 521, 529–31 (1973). "Employee of the government" under the FTCA is defined as "officers or employees of any federal agency, . . . and persons acting on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671; *Carrillo v. U.S.*, 5 F.3d 1302, 1304 (9th Cir. 1993) (citing 28 U.S.C. § 2671). "Federal agency," is defined to include "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." 28 U.S.C. § 2671. The term federal agency, however, expressly excludes "any contractor with the United States." *Carrillo*, 5 F. 3d at 1304. Thus, the Government cannot be sued for the acts or omissions of its independent contractors.

The Supreme Court of the United States relies on the "control test" to determine whether an individual is an employee or an independent contractor under the FTCA. The control test looks at the Government's power to control the detailed physical performance of the contractor. *U.S. v. Orleans*, 425 U.S. 807, 808 (1976); *Logue*, 412 U.S. at 528 (1973). A court will determine a party to be an employee of the Government for the purposes of the FTCA if the Government enjoys the power to control the detailed physical performance of the contractor or supervises the day-to-day operations of the contractor. *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) (stating "[T]he critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the 'detailed physical performance' and 'day to day operations' of the contractor."). A contractor is considered to be an employee only if the government agency manages the details of the contractor's work or supervises his daily duties, but not if the government agency acts generally as an overseer. *Autery*, 424 F.3d at 956–57.

Contractual provisions directing detailed performance generally do not abrogate the contractor exception, and the Government may fix specific and precise conditions to implement federal objectives without becoming liable for an independent contractor's negligence. *Autery*, 424 F.3d at 957; *Orleans*, 425 U.S. at 816. Employees of federally funded programs may be responsible to the United States for compliance with the specifications of a contract or grant, but they are not federal employees for purposes of the FTCA when they "are largely free to select the means of . . . implementation." *Orleans*, 425 U.S. at 816–17. The terms of a contract are not dispositive as to whether a party is an employee of the Government for purposes of the FTCA. *Gibbons v. Fronton*, 533 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). "[T]he real test is control over the primary activity contracted for and not for the peripheral, administrative acts relating to such activity." *Carrillo*, 5 F.3d at 1305 (citing *Wood v. Standard Prods. Co., Inc.*, 671 F.2d 825, 832 (4th Cir. 1982)).

The Defendant argues that Murtagh is not a government employee within the meaning of the FTCA, and, therefore, the Court does not have subject-matter jurisdiction over this case. (Doc. 23 at 7–8) The Defendant argues that it contracted with "medical employment placement agencies" that provided emergency physician services at the Hospital. (Doc. 23 at 2, 4) The Defendant contracted with Harris pursuant to the Solicitation, which incorporated the PWS. (Doc. 23 at 2) The Defendant argues that Murtagh was hired by Harris to provide services at the Hospital as an independent contractor. (Doc. 23 at 4) In response, the Plaintiff argues that (i) the Defendant failed to provide sufficient extrinsic evidence demonstrating that Murtagh is not an independent contractor, and (ii) the plain terms of the Solicitation identify Harris as a contractor, not Murtagh. (Doc. 28 at 5)

It is well settled that physicians practicing medicine under contract in federal facilities qualify as independent contractors under the FTCA, not government employees. *Carrillo*, 5 F.3d at 1304; see also *Robb v. United States*, 80 F.3d 884, 893 (4th Cir. 1996) (holding that physicians contracted with the Air Force were not government employees, but independent contractors); *Quilico v. Kaplan*, 749 F.2d 480, 484 (7th Cir. 1984) (holding

that physicians "may not be strictly controlled by their employer because of the necessity to fulfill their ethical obligation to exercise independent judgment in the best interest of their patients"). The Plaintiff does not dispute the fact that the Hospital contracted with Harris to hire physicians or that Murtagh was hired by Harris to perform medical services at the Hospital. (Doc. 17 at 5–7) The Plaintiff seems to ignore the evidence provided by the Defendant of the Solicitation and the Begay Declaration stating that Murtagh was hired pursuant to the Solicitation.[1] (Doc. 23-1; Doc. 24-1) Furthermore, the plain terms of the PWS identify "Contractor" as the organization awarded a contract to provide services and "includes the organization's employees." (Doc. 17-1 at 4) Thus, it is clear that the terms of the PWS demonstrate that the Hospital contracted with Harris, and the terms of the PWS applied to the employment of Murtagh at the Hospital. The PWS in tandem with the Solicitation demonstrates that Murtagh was an employee of Harris, not the Defendant, at the time of the child's death.

Additionally, the Court finds that the Defendant did not have sufficient control over Murtagh's practice of medicine under the control test. In the present case, Harris contracted to provide physicians at the Hospital, a federal health care facility. (Doc. 17 at 5–6) This is analogous to the arrangement between the [parties] in *Carrillo*. Also analogous is the level of control the hospitals had over the contracted physicians. First, the PWS identifies as a "Non-Personal Services Contract," which is later defined as "a contract under which the personnel rendering the services are not subject, either by the contract's terms or by the manner of its administration, to the supervision and control usually prevailing in relationships between the Government and its employees . . . ." (Doc. 17-1 at 5) In *Carrillo*, the court found that despite the hospital's control over the physician's administrative duties and the hours the doctor would see patients, the physician maintained his independent professional judgment. *Carrillo*, 5 F.3d at 1305. Similarly here, the Hospital had some administrative control over Murtagh, such as in setting his work schedule and managing

---

[1] The Court notes that neither party has provided the Court with any contract signed by Murtagh.

8

how he handled patient information. (Doc. 17-1 at 10, 12) Beyond that, however, in both cases the physicians had independence in their practice of medicine. Both physicians had control in diagnosing and treating their patients, and there is little evidence that either hospital controlled the detailed, physical, day-to-day performances of the physicians practicing there.

As evidence of Hospital control over Murtagh, one may point to a clause in the PWS which stated that all services rendered by Murtagh would be "inspected, reviewed, and monitored by the [Hospital's] Chief of the Emergency Room or his designee." (Doc. 17-1 at 9) However, the Court finds that this language serves as a quality assurance clause that gives the Hospital the right to evaluate the quality of Murtagh's services. It does not give the Hospital the right to control his independent professional judgment in making patient decisions. Thus, in accordance with unanimous precedent, the Court finds that Murtagh was an independent contractor under the control test, as he was a physician contracted to provide services at a federal facility.

2. Indian Health Care Improvement Act Section 1680c(e)

The Plaintiff argues that section 1680c(e) of the IHCIA, when read in conjunction with Section 7.0 of the PWS, designates Murtagh as a federal employee. 25 U.S.C. § 1680c(e). Section 1680c(e) of the IHCIA states that healthcare practitioners who are under contract with the Indian Health Service may be "designated as employees of the Federal Government for purposes of section 1346(b) and chapter 171 of Title 28 (relating to Federal tort claims) only with respect to acts or omissions which occur in the course of providing services . . ." 25 U.S.C. § 1680c(e). Furthermore, Section 7.0 of the PWS states that "the recently passed 25 U.S.C. § 1680c(e) may extend Federal Tort Claims Act coverage to these 'non-Service health care practitioners' who are given clinical privileges and who provide health care services . . . ." Both subsections use "may" language. The Court has recently addressed the provision and, in doing so, looked closely at the terms of the PWS to determine what effect § 1680c(e) had on the physician's employment status. *Tsosie v. United States*, 2019 WL 2476601, at 3–4 (D. Ariz. 2019). The plaintiff in *Tsosie*

alleged that a physician had been negligent in his care of the plaintiff's son. In *Tsosie*, the physician was a contract emergency medicine service physician who worked for a medical staffing agency that had a contract with a hospital, and the contract between the hospital and the medical staffing agency included both a contract/purchase order and a PWS for emergency medicine service physicians. *Tsosie*, 2019 WL 2476601 at 1. In that case, the PWS contained a FTCA clause that stated FTCA coverage "is extended to [IHS] Nonpersonal Service Contractors if the health care practitioner is providing services in an IHS facility to IHS beneficiaries." *Tsosie*, 2019 WL 2476601 at 1. In that case, the Court held that the physician, who was a health care practitioner providing services in an IHS facility to IHS patients, was an employee of the Government because the terms of the PWS explicitly said so and § 1680c(e) had permitted such a designation. *Tsosie*, 2019 WL 2476601, at 3–4.

In the present case, the terms of the PWS do not explicitly grant FTCA protection to Murtagh. (Doc. 17-1 at 15) Instead, the terms merely acknowledge that FTCA protection may be afforded to some practitioners under § 1680c(e), basically repeating the language from the statute. (Doc. 17-1 at 15) The relevant section of the PWS in the present case states that "1680c(e) may extend [FTCA] coverage to these 'non-Service health care practitioners' who are given clinical privileges and who provide health care services to patients eligible for services from the [IHS] . . . ." (Doc. 17-1 at 15) This is distinctly different language than that found in the PWS in *Tsosie*. The terms of § 1680c(e) state that privileged practitioners may be designated as employees of the Government. Absent this designation, however, the Court finds that Murtagh cannot be considered an employee of the government.

### 3. Bad Men Clause

In the late 1860s, the United States signed a series of peace treaties with Native American tribes in an effort to end ongoing conflicts in the American West. The Navajo Treaty of 1868, like many of the other treaties, includes a provision known as the "Bad Men" clause, which states: "[i]f bad men among the whites, or among other people subject

to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will . . . cause the offender to be arrested and punished according to the laws of the United States . . . ." 15 Stat. 667.  In summary, the clause states that if an outsider, originally anticipated to be a white settler or Indian from another tribe, commits a wrong against a protected tribe, the tribe can deliver that outsider to the U.S. government to suffer under the weight of the federal criminal justice system. Lillian Marquez, *Making "Bad Men" Pay: Recovering Pain and Suffering Damages for Torts on Indian Reservations Under the Bad Men Clause*, 20 Fed. Circuit B.J. 609, 613 (2011).  To bring a claim under the bad men clause, a plaintiff must first have suffered a "wrong" within the intent of the treaty, which courts have held to mean that only criminal claims may be brought under the Bad Men clause, not civil claims such as negligence. *Garreaux v. U.S.*, 77 Fed. Cl. 726, 736–37 (2007).  The Plaintiff alleges claims for medical negligence, negligent hiring and supervision, wrongful death, and vicarious liability, all of which are civil matters.  Accordingly, the Court finds that the Plaintiff has not suffered a "wrong" within the meaning of the Bad Men clause, and the Bad Men clause cannot confer subject matter jurisdiction in this case.

4. Equitable Estoppel

In response to the Motion, the Plaintiff argues for the first time that there is subject matter jurisdiction in this case on the basis of equitable estoppel.  However, it is well settled that "parties cannot by consent, waiver or estoppel obtain federal subject matter jurisdiction." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1374 (9th Cir. 1987); *Kuhlmann v. Sabal Fin. Grp. LP*, 26 F. Supp. 3d 1040, 1050 (W.D. Wash. 2014) (stating "[d]octrines of waiver, estoppel, and equitable tolling do not apply to subject matter jurisdiction requirements").  Accordingly, the Court finds that the Plaintiff's argument for subject-matter jurisdiction on the basis of equitable estoppel fails.

**B. 12(b)(6) – Failure to State a Claim**

The Defendant moves to dismiss the Plaintiff's negligent hiring and supervision claim for failure to state a claim upon which relief may be granted. (Doc. 23 at 14)  For this

claim, the Plaintiff alleges that the Defendant was negligent in its hiring and supervision of Harris, the medical employment placement agency that placed Murtagh at the Hospital. (Doc. 17 at 11)  In light of Murtagh's lack of training or board certification as an emergency medicine physician, the Plaintiff argues that the Defendant is liable for its failure to properly investigate and supervise Harris and for its failure to follow the PWS. (Doc. 17 at 6, 11–12)

Under Arizona law, an employer can be held liable for the negligent hiring, retention, or supervision of an employee if a court first finds that the employee committed a tort. *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004) (citing *Mulhern v. City of Scottsdale*, 799 P.2d 15, 18 (Ariz. Ct. App. 1990)). "If the theory of the employee's underlying tort fails, an employer cannot be negligent as a matter of law for hiring or retaining the employee." *Mulhern*, 799 P.2d at 18. In Arizona, "[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent . . . (a) in giving improper or ambiguous orders . . . (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others . . . [or] (c) in the supervision of the activity . . . ." *Kassman v. Busfield Enter., Inc.*, 639 P.2d 353, 356 (Ariz. Ct. App. 1981) (citing Restatement (Second) of Agency § 213 (1958)). Liability for negligent hiring or supervision results when "the employer has not taken the care which a man would take in selecting the person for the business in hand." *Id.*

In the present case, the Plaintiff seeks to name the United States as a defendant without alleging that the party alleged to be the United States' employee in this case, Harris, has committed a tort under Arizona law.  In the complaint, the Plaintiff alleges tort liability against the Defendant and against Murtagh, but never specifies a tort that Harris is responsible for.  For example, under Paragraph 64 of the complaint, the Plaintiff lists six reasons for why the Defendant is allegedly negligent. (Doc. 17 at 11)  However, none of those reasons explicitly allege that Harris was negligent.  The same is true in Paragraphs 23 and 24 of the complaint, where the Plaintiff details that Murtagh was not trained or board certified and that "Defendant USA negligently hired [Harris]" and "[failed] to independently examine, investigate, document, and evaluate" Murtagh. (Doc. 17 at 6)

Again, the Plaintiff is alleging the negligence of the Defendant and Murtagh, but not of Harris. Thus, the Plaintiff's failure to do so fails to state a claim upon which relief may be granted.

The Plaintiff also uses conclusory language to support its claim for negligent hiring and supervision. In the complaint, the Plaintiff fails to identify any specific act or omission by the Defendant to support its claim of negligent hiring. While the record indicates that Murtagh was not properly certified, the Plaintiff makes no factual allegations that his hiring or supervision constituted negligence on the part of the Defendant. Moreover, beyond this list of broad, open-ended failures to comply with the PWS, the Plaintiff does not provide any detail to the allegations. It is unclear just how the Defendant failed to investigate, supervise, or follow the PWS. The Plaintiff's reliance on conclusory statements fails to meet the pleading standards required to overcome a Rule 12(b)(6) motion for dismissal. Therefore, the Motion will be granted on Count III.

Accordingly,

**IT IS ORDERED** that the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. 23) is **granted**.

Dated this 31st day of July, 2019.

Honorable Steven P. Logan
United States District Judge